IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re:<br><br>IFS Securities, Inc.,<br>　　　　　　　Debtor. | Chapter 11<br><br>Case No. 20-65841-lrc |

**DECLARATION OF MARSHALL GLADE IN SUPPORT OF THE DEBTOR'S
CHAPTER 11 PETITION AND REQUEST FOR FIRST DAY RELIEF**

Pursuant to 28 U.S.C. § 1746, I, Marshall Glade, do hereby declare, under penalty of perjury, the following to the best of my knowledge and belief:

1. I am a Senior Managing Director of GlassRatner Advisory & Capital Group LLC ("**GlassRatner**"). Prior to the filing of this Chapter 11 case, I was retained as the Chief Restructuring Officer ("**CRO**") of the above captioned debtor and debtor-in-possession (the "**Debtor**" or the "**Company**"). As a result, I am familiar with the day-to-day operations and business and financial affairs of the Debtor.

2. I have over fourteen (14) years of experience in the restructuring industry, having served in numerous capacities in connection with chapter 11 cases.

3. I have advised companies through out-of-court restructurings, formal bankruptcy proceedings, formal sales processes, pre-acquisition due diligence, forensic accounting investigations, complex valuations and liquidation and trustee advisory work.

4. I have worked in a number of interim management roles, including Chief Restructuring Officer and Chief Financial Officer. Moreover, I have served as financial advisor to debtors, unsecured creditor committees and chapter 11 Trustees, and have been appointed as a liquidating trustee.

5. I submit this declaration (the "**First Day Declaration**") in support of the Debtor's chapter 11 petition and requests for relief contained in certain "first day" applications and motions filed on or shortly after the date hereof (the "**First Day Motions**").[1]

6. On April 24, 2020 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. Except as otherwise indicated herein, all facts set forth in this First Day Declaration are based upon my personal knowledge of the Debtor's operations, information learned from my review of relevant documents, information supplied to me by other members of the Debtor's management and the Debtor's advisors, or my opinion based on my experience, knowledge, and information concerning the Debtor's operations and financial condition. I am authorized to submit this First Day Declaration on behalf of the Debtor, and, if called upon to testify, I could and would testify competently to the facts set forth herein.

8. Part I of this First Day Declaration provides a brief overview of the Debtor and a summary of this Chapter 11 Case. Part II of this First Day Declaration describes in more detail the Debtors' businesses, the developments which led to the Debtor's chapter 11 filing and its goals during this Chapter 11 Case. Part III sets forth the relevant details of the various First Day Motions.

---

[1] All capitalized terms used herein, but otherwise not defined, shall have the meanings set forth in the relevant First Day Motion.

2

## I. INTRODUCTION

9. The Debtor was a securities broker-dealer, registered with the Securities and Exchange Commission ("SEC") and a member of the Financial Industry Regulatory Authority ("FINRA"). Headquartered in Atlanta, Georgia, the Debtor was one of the most successful minority owned broker-dealers in the United States, with approximately 20,000 customers.

10. Until August 2019, the Company was profitable and well-capitalized. By March 31, 2019, the Company's audited financial statements reported assets of $18,954,399, equity of $5,253,292, regulatory net capital of $3,986,952, and regulatory excess net capital of $3,806,862. Later in 2019, the Company reported excess net capital as high as $4,238,244 (as of May 31, 2019).

## II. BACKGROUND

### A. General Background

11. The Company is a Pennsylvania corporation that was formed in 1993.

12. The Company's President and Chief Executive Officer from 2006 to the present, Alexys Mckenzie ("**Mckenzie**"), has been in the securities brokerage business since 1993.

13. Mckenzie and others purchased the equity interests of the Company in 2006. IFS Group, Inc. ("**Group**") is the current owner of the equity interests of the Company. Mckenzie and others own IFS Group. Mckenzie owns the greatest number of shares of IFS Group of any single owner.

### B. IFS's Demise

14. IFS was forced to begin winding down its operations in August 2019 when it suffered large losses, well in excess of its capital. These losses arose from numerous speculative transactions in Treasury securities (namely, short sales), for IFS's own account and using its own capital, engaged in Keith Wakefield ("**Wakefield**"). Under the Company's policies, Wakefield

3

was not permitted to engage in speculative trading of Treasury securities with the Company's funds.

15. Through artifice and deceit, Wakefield kept his unauthorized trades, which caused the Company substantial losses, a secret from Mckenzie and other members of IFS's management. Wakefield's employment with the Company was terminated when these trades were discovered.

16. The losses led to the Company's termination of its active business operations.

17. Following the discovery of Wakefield's unauthorized trades, the Company took steps to locate additional capital in an effort to shore up its finances, and to find a buyer for its assets. These efforts were not successful.

18. Ultimately, however, many of the Company's customers began shifting their accounts to other broker-dealers.

19. Until February 28, 2020, upon the SEC's approval of its withdrawal from registration, the Debtor was registered as a broker-dealer. Upon this withdrawal, the Company ceased being a member of FINRA.

20. The Debtor no longer has any customer accounts and is no longer a broker-dealer.

21. Prior to the Petition Date, the Debtor determined that, in order to maximize returns to its creditors, a liquidation under Chapter 11 was the most appropriate option.

22. Accordingly, the Debtor anticipates continuing its liquidation and confirming a liquidating chapter 11 plan.

23. The Debtor has engaged GlassRatner to provide certain services to the Debtors to facilitate this chapter 11 case, including my services as CRO of the Debtor. In my role as CRO, I am authorized to make decisions with respect to the management and operation of the Company's business, including, without limitation, to guide them through the liquidation process.

24.  In addition, as CRO, it is my responsibility to develop and review potential strategic alternatives to maximize the value of the Debtor's business and assist in the liquidation of all, or substantially all, of the Debtor's assets, including certain causes of action.

C. **Prepetition Financial Condition**

  i. *Assets*

25.  The Debtors' assets consist primarily of cash and causes of action. As of April 24, 2020, the Debtor estimates that the value of its liquid assets was approximately $300,000 in cash. However, the Debtor holds various claims and causes of action which have significant value.[2]

26.  The Debtor has causes of action or claims against, without limitation, the following:

  a. Keith Wakefield;

  b. A recovery on its $3 million fidelity bond;

  c. INTL FCStone Financial, Inc.; and

  d. Group.

The Debtor believes that the liquidation of its assets will result in gross proceeds in excess of $5 million, which will be distributed to its creditors pursuant to a chapter 11 plan.

  ii. *Liabilities*

27.  As of the Petition Date, the Debtor's outstanding debt obligations consist primarily of obligations to various trading counterparties and vendors. The Debtor has approximately $25.3 million in unsecured debt. The amount of debt attributable to the various trading counterparties is

---

[2] The value of the Debtor's causes of action is currently unknown. However, the Debtor believes that they are the most significant asset of the estate, and that their value may exceed $5,000,000.

based on the amount of losses that these parties have claimed to the Debtor to have suffered as a result of the failure of the Debtor to settle sales of Treasury securities to these parties.

28. The Debtor has no secured lender, and no UCC-1 financing statements have been filed against the Debtors in Pennsylvania or Georgia.

      iii. **_Equity Interests_**

29. As referenced above, Group owns 100% of the equity interests in the Company.

**D. Events Leading up to this Chapter 11 Case**

30. The unauthorized actions of Wakefield led directly to the demise of the Debtor. But for Wakefield's actions, the Debtor would have continued its profitable operations.

31. Given Wakefield's actions and the Debtor's desire to confirm a liquidating plan, the Debtor has determined that a chapter 11 filing is the best way to preserve value for their creditor constituents.

**E. Debtor's Goals in This Chapter 11 Case**

32. The Debtor's goals in these chapter 11 cases are to (i) maximize the value of its assets through the continued prosecution of causes of action and (ii) propose a chapter 11 plan to facilitate distributions to creditors holding allowed claims.

### III.    FIRST DAY MOTIONS

**A. Motion of the Debtor for Entry of Order (A) Authorizing the Maintenance of Bank Account and Continued Use of Existing Business Forms and Checks and (B) Waiving Certain Investment and Deposit Guidelines**

33. The Debtor seeks an order: (a) authorizing the maintenance of its Bank Account and continued use of existing Business Forms (as defined below); (b) authorizing, but not

directing, continued use of existing cash management system (the "**Cash Management System**"); (c) waiving certain of the investment and deposit Guidelines set forth by the Office of the United States Trustee; and (d) providing any additional relief required in order to effectuate the foregoing.

34. Prior to the commencement of these Chapter 11 Cases, and in the ordinary course of business, the Debtors maintained a bank account at Renasant Bank (the "**Bank Account**").

35. The Debtor's transition into chapter 11 will be significantly less disruptive if the Bank Account is maintained following the commencement of the Chapter 11 Case with the same account number and, where applicable, automated relationship.

### ii. Business Forms

36. Additionally, in the ordinary course of business, the Debtor uses pre-printed check stock with the Debtor's name printed thereon. In addition, the Debtor maintains pre-printed correspondence and business forms, including, but not limited to, letterhead, envelopes, promotional materials and other business forms (collectively, along with the Debtor's checks, the "**Business Forms**").

37. I understand that the Debtor will be able to minimize administrative expense and delay if it could continue to use their Business Forms substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtor's "Debtor-in-Possession" status.

**B. <u>Motion of the Debtor for Entry of an Order Establishing a Deadline for Filing Proofs of Claim and Approving Form and Notice Thereof</u>**

38. To move this case forward in an expeditious manner, the Debtor seeks an order establishing a deadline, or bar date, for filing proofs of claim.

7

39. The Debtor requests that the Court establish June 15, 2020 as the Bar Date. The fixing of this date as the Bar Date will enable the Debtor to receive, process, and begin the analysis of creditors' claims in a timely and efficient manner.

40. I believe that setting a deadline for filing proofs of claims asserted by all persons and entities and barring claims filed beyond that deadline is necessary to quantify the aggregate dollar amount of claims outstanding against the Debtor.

### C. Motion of the Debtor for Entry of an Order Authorizing the Rejection of Certain Real Property Leases

41. Prior to the Petition Date, in the ordinary course of its business, the Debtor occupied certain office space. The Debtor does not own the real property where the offices were located and instead leased the real property from two landlords (the "**Landlords**") pursuant to certain leases. The Rejected Leases are of locations in Atlanta, Georgia and Spanish Fort, Alabama, which comprise the Rejected Leases.

42. The Spanish Fort lease appears to have expired by its terms, though it is subject to automatic renewal and is being rejected out of an abundance of caution. With respect to the Atlanta lease, the Debtor's management determined that it would be appropriate to cease occupying that office space given that the Debtor is no longer doing business.

43. The Debtor has ceased occupying the locations covered by the Rejected Leases, and has surrendered possession of the leased premises to the Landlords.

44. For these reasons, the Debtor is seeking to reject the Rejected Leases. The Rejected Leases do not benefit the Debtor. Further, the Rejected Leases do not, and likely will not, provide any value to the Debtor or its estate.

### D. Motion to Expedite

45. Pursuant to the Motion to Expedite, the Debtor seeks entry of an order shortening applicable notice periods and scheduling a hearing on an expedited basis to consider the motions filed by the Debtor contemporaneously herewith. I believe that expedited consideration of the First Day Motions is warranted, and good cause exists because the relief requested in the First Day Motions is necessary to ensure that there is no interruption in the services being provided by the Debtor and no damage to the value of the Debtor's assets.

### IV.   CONCLUSION

46. For the reasons described herein, I believe that the prospect for achieving these objectives for the benefit of creditors and other stakeholders will be substantially enhanced if this Bankruptcy Court grants the relief requested in each of the First Day Motions and respectfully request the Bankruptcy Court to do so.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 27, 2020              /s/ Marshall Glade
                                   Marshall Glade
                                   Chief Restructuring Officer