**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| IFS Securities, Inc., | Case No. 20-65841-LRC |
| Debtor. | |

## DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

GREENBERG TRAURIG, LLP
John D. Elrod
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: (678) 553-2259
Facsimile: (678) 553-2269
Email:   elrodj@gtlaw.com

*Proposed Counsel to the Debtor-in-Possession*

Dated:  June 13, 2020

*ACTIVE 50889487v4*

Table of Contents

Page

SECTION 1.      DEFINITIONS AND INTERPRETATION ..................................................1

SECTION 2.      BACKGROUND AND DISCLOSURES.........................................................1

2.1    The Debtor's Business and Corporate Structure.........................................................1

2.2    The Debtor's Prepetition Indebtedness ........................................................................1

2.3    Event Precipitating the Chapter 11 Filing ...................................................................2

2.4    The Chapter 11 Case ......................................................................................................2

2.5    Certain Federal Income Tax Consequences ................................................................3

2.6    Alternate Plan .................................................................................................................3

2.7    Best Interests Test and Liquidation Analysis..............................................................3

SECTION 3.      TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY TAX
CLAIMS, AND U.S. TRUSTEE FEES ..................................................4

3.1    Administrative Claims ...................................................................................................4

3.2    Priority Tax Claims........................................................................................................4

3.3    U.S. Trustee Fees ............................................................................................................4

SECTION 4.      SUMMARY OF TREATMENT OF CLAIMS AND ESTIMATED
RECOVERIES ........................................................................................5

SECTION 5.      CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS............................................................................................5

5.1    Classification and Specification of Treatment of Claims ...........................................5

5.2    Classes of Claims............................................................................................................6

5.2.1    Class 1 – Unsecured Priority Claims ..............................................................6

5.2.2    Class 2 – General Unsecured Claims ..............................................................6

5.2.3    Class 3 – Subordinated Claims .......................................................................6

5.2.4    Class 4 – Interests ...........................................................................................6

SECTION 6.      ACCEPTANCE OR REJECTION OF THE PLAN ...........................................6

6.1    Impaired Classes Vote ...................................................................................................6

6.2    Presumed Acceptance of this Plan................................................................................6

6.3    Presumed Rejection of this Plan ...................................................................................6

6.4    Voting Classes .................................................................................................................7

6.5    Nonconsensual Confirmation........................................................................................7

SECTION 7.      MEANS FOR IMPLEMENTATION OF PLAN ...........................................7

7.1    Funding for this Plan......................................................................................................7

i

Table of Contents (continued)

Page

7.2  Formation of the Trust ...................................................................................7

7.3  Appointment of Liquidating Trustee; Deemed Resignation of Directors and Officers ...............................................................................................................7

7.4  Vesting of Assets ...........................................................................................8

7.5  Corporate Action ...........................................................................................8

7.6  Continuing Existence .....................................................................................8

7.7  Causes of Action ...........................................................................................8

7.8  Agreements, Instruments, and Documents ...................................................9

7.9  Bar Date for Administrative Claims ..............................................................9

7.10  Closing of the Debtor's Chapter 11 Case .....................................................9

7.11  Corporate Dissolution ...................................................................................9

7.12  Effective Date Events ....................................................................................9

SECTION 8.       PROVISIONS REGARDING LIQUIDATING TRUSTEE...........10

8.1  General Powers and Duties of the Liquidating Trustee ...............................10

8.2  Compensation of Liquidating Trustee and his Professionals.......................11

8.3  No Agency Relationship ..............................................................................11

8.4  Reporting.......................................................................................................11

8.5  Resignation, Death or Removal of Liquidating Trustee ..............................11

SECTION 9.       EXECUTORY CONTRACTS....................................................11

9.1  Rejection of Contracts ..................................................................................11

9.2  Insurance Contracts ......................................................................................12

9.3  Compensation and Benefit Programs............................................................12

9.4  Reservation of Rights as to Executory Contracts ........................................12

SECTION 10.       DISTRIBUTION PROVISIONS ................................................12

10.1  No Distributions on Account of Claims That Have Not Become Allowed Claims .............................................................................................................12

10.2  Reserves for Claims That Have Not Been Allowed .....................................12

10.3  Distribution of Plan Consideration ..............................................................13

10.4  Unclaimed Cash ............................................................................................13

10.5  Unnegotiated Distribution Checks................................................................13

10.6  Fractional Dollars.........................................................................................13

ACTIVE 50889487v4

Table of Contents (continued)

Page

10.7 Distribution Dates ..........................................................................................13

10.8 Bankruptcy Code Sections 509 and 510 .........................................................13

10.9 Distributions to be Applied First to Administrative and Priority Claims ..................13

10.10 Estimation of Claims........................................................................................14

10.11 Chapter 5 Provisions ......................................................................................14

10.12 Third-Party Agreements..................................................................................14

10.13 Objections to Claims.......................................................................................14

10.14 Settlement of Causes of Action and Disputed Claims ..................................14

10.15 Setoffs ..............................................................................................................15

10.16 Distribution Cap ..............................................................................................15

10.17 De Minimis Distributions ...............................................................................15

10.18 Withholding Taxes ..........................................................................................15

10.19 Distribution Record Date ................................................................................15

SECTION 11.    CONDITIONS PRECEDENT ...............................................................16

11.1 Conditions to Confirmation .............................................................................16

11.2 Conditions to Effective Date ...........................................................................16

11.3 Nonfulfillment of Conditions ..........................................................................16

SECTION 12.    EFFECTS OF PLAN CONFIRMATION................................................16

12.1 Satisfaction of Claims......................................................................................16

12.2 Interest on Claims, Fees, Costs, Charges ........................................................16

12.3 Exculpation ......................................................................................................16

12.4 Injunction .........................................................................................................17

12.5 Post-Effective Date Effect of Evidences of Claims ........................................17

12.6 Surrender of Instruments and Release of Liens ..............................................17

12.7 Term of Stays ...................................................................................................17

12.8 No Discharge ....................................................................................................17

12.9 SEC Rights Preserved ......................................................................................17

12.10 Retention of Jurisdiction .................................................................................18

12.11 Failure of the Court to Exercise Jurisdiction ..................................................19

SECTION 13.    MISCELLANEOUS PROVISIONS......................................................19

13.1 Exemption from Transfer Taxes ......................................................................19

iii

Table of Contents (continued)

Page

13.2    Modification of Plan ..................................................................................19

13.3    Revocation of this Plan .............................................................................19

13.4    Preservation and Application of Insurance ...............................................19

13.5    Votes Solicited in Good Faith ...................................................................20

13.6    Successors and Assigns, Binding Effect ...................................................20

13.7    Computation of Time ................................................................................20

13.8    Notices ......................................................................................................20

13.9    Severability ...............................................................................................20

13.10   Validity and Enforceability .......................................................................20

13.11   Plan Supplement .......................................................................................20

13.12   Controlling Documents .............................................................................21

13.13   Reservation of Rights ................................................................................21

13.14   Substantial Consummation ........................................................................21

13.15   Governing Law ..........................................................................................21

iv

The Debtor in the above-referenced case (the "***Debtor***" or "***IFS***") proposes the following Combined Disclosure Statement and Plan of Liquidation (the "***Plan***") for the resolution of outstanding Claims against the Debtor and its estate pursuant to chapter 11 of title 11 of the United States Code. The Debtor is the proponent of this Plan within the meaning of Bankruptcy Code Section 1129.

All holders of Claims against the Debtor are encouraged to read this Plan, the Disclosure Statement and other Plan Documents in their entirety as soon as possible. The Plan Documents, once Filed, shall be available for review in the office of the clerk of the Bankruptcy Court. Holders of Claims may also obtain a copy of the Plan Documents by contacting counsel for the Debtor by a written request sent to the above address. Each of the Plan Documents is an integral part of this Plan and is hereby incorporated by reference and made a part of this Plan.

## SECTION 1.    DEFINITIONS AND INTERPRETATION

### A.    Definitions.

Capitalized terms used in this Plan and not otherwise defined in this Plan or in the Bankruptcy Code have the meanings specified in the attached **Exhibit 1**.

### B.    Rules of Construction.

Unless otherwise specified, all Section or Exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. The rules of construction contained in Bankruptcy Code Section 102 shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, (i) any reference in this Plan to an existing document, Exhibit or Schedule means such document, Exhibit or Schedule as it may have been amended, restated, revised, supplemented or otherwise modified, and (ii) any reference in this Plan to a document being in a particular form or on particular terms means that such document will be substantially in such form or on such terms. If a time or date is specified for any payments or other distribution under this Plan, it shall mean on or as soon as reasonably practicable thereafter. Each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.

## SECTION 2.    BACKGROUND AND DISCLOSURES

### 2.1    *The Debtor's Business and Corporate Structure*.

The Debtor historically owned and operated a broker-dealer business. The Debtor was headquartered in Atlanta, Georgia. The Debtor is wholly owned by IFS Group, Inc. ("***Group***").

### 2.2    *The Debtor's Prepetition Indebtedness*.

As of the Petition Date, the Debtor's outstanding debt primarily consists of obligations to trading counterparties and vendors. The Debtor estimates that it has not less than $25 million in

unsecured debt.   The Debtor also has several subordinated creditors whose claims are subordinated to all general unsecured creditors.

2.3    ***Event Precipitating the Chapter 11 Filing***.

The Debtor was a successful broker-dealer until the summer of 2019, with thousands of customers.  It is a Pennsylvania Corporation with its principal place of business in Atlanta, Georgia, and was a registered securities broker-dealer and member of Financial Industry Regulatory Authority, Inc. ("***FINRA***").

Until August 2019, IFS was a small but profitable and well-capitalized broker-dealer. IFS began operations in 2006. By March 31, 2019, IFS's audited financial statements reported assets of $18,954,399, equity of $5,253,292, net capital of $3,986,952, and excess net capital of $3,806,862.  Later in 2019, IFS' reported excess net capital was as high as $4,238,244 (May 31, 2019).

IFS was forced to begin winding down its operations in August 2019 when it suffered huge losses, well in excess of its capital. These losses arose from rampant speculative Treasury transactions (short sales), for IFS' own account and using its own capital, engaged in by its head of fixed income, Keith Wakefield ("***Wakefield***"). Wakefield was not permitted, under the Company's policies, to engage in speculation in Treasuries.

As a result of Wakefield's actions, IFS lost its entire capital—over $5,000,000, built through the collective effort of hundreds of employees over 13 years, starting with the initial investment of the lifetime earnings of IFS's founder, Alexys Mckenzie ("***Mckenzie***").  Due to this unauthorized trading, which Mckenzie was unaware of, IFS suffered approximately $25,000,000 in losses with trading counterparties who had to cover their losing positions.

The Debtor no longer has any customers, and is in the process of liquidating its assets and pursuing Causes of Action for the benefit of its creditors.  Until February 28, 2020, upon the SEC's approval of the Debtor's withdrawal from registration, it was registered as a broker-dealer. Upon withdrawal, the Debtor ceased being a member of FINRA.

The Debtor has identified Causes of Action against, among others, (i) Wakefield, (ii) INTL FCStone Financial, Inc., (iii) an action on the Debtor's fidelity bond relating to Wakefield's conduct, and (iv) Group.

2.4    ***The Chapter 11 Case***.

The Debtor filed this Chapter 11 Case to effectuate an orderly liquidation of its assets. During this case, it has sought the rejection of burdensome leases and other first day relief.

The Debtor has sought Court authorization for the return of certain transfers made to Group, IFS Advisory, Inc., and Mckenzie.  *See Debtor's Motion to Approve Compromise and Settlement of Claims Against IFS Group, Inc., IFS Advisory, LLC, and Alexys Mckenzie.*  If approved, these settlements will bring cash of $1,120,715 into the bankruptcy estate, subject to the terms of the proposed settlement agreements.

2

On June 8, 2020, two alleged creditors of the Debtor filed the *Joint Motion by Creditors R. Bryan Edwards and Craig Walker for Appointment of a Trustee Pursuant to 11 U.S.C. §§1104(A)(1) and 1104(A)(2)*. The Debtor believes this motion is without merit, and intends to contest the requested relief. Walker does not hold a valid claim against the Debtor, and instead owes the Debtor money. Walker was asked to resign from the Debtor due to his repeated misconduct. Edwards claims to be a creditor of the Debtor for a commission relating to the sale of an annuity, but did not follow IFS's internal protocol for obtaining client authorization.

At a hearing on June 11, 2020, over the objection of Edwards and Walker, the Court approved this Disclosure Statement on an interim basis. On that same date, the Court approved, over the objection of Edwards and Walker, the retention of the Debtor's counsel, Greenberg Traurig, LLP, its financial advisor GlassRatner Advisory & Capital, LLC and Marshall Glade as its Chief Restructuring Officer. The confirmation hearing is set for [____], 2020.

The Debtor is seeking to retain Richard Brodsky, a seasoned securities litigator, to prosecute the claims against INTL FCStone Financial, Inc. and the claim on the fidelity bond relating to Wakefield's conduct. The Debtor believes that these claims will result in material recoveries for the estate. Further, the Debtor intends to prosecute claims against Wakefield for his acts which led to the Debtor's insolvency.

2.5   ***Certain Federal Income Tax Consequences***.

The confirmation and execution of the Plan may have tax consequences to Holders of Claims and Interests. The Debtor does not offer an opinion as to any federal, state, local or other tax consequences to Holders of Claims and Interests as a result of the confirmation of the Plan. All Holders of Claims and Interests are urged to consult their own tax advisors with respect to the federal, state, local and foreign tax consequences of the Plan. This Plan is not intended, and should not be construed, as legal or tax advice to any Creditor, Interest Holder, or other party in interest.

2.6   ***Alternate Plan***.

If the Plan is not confirmed, the Debtor or any other party in interest could attempt to formulate a different plan. However, the additional costs, which may constitute Administrative Expense Claims may be so significant that one or more parties in interest could request that the Chapter 11 Case be converted to chapter 7. Accordingly, the Debtor believes that the Plan enables creditors to realize the best return under the circumstances.

2.7   ***Best Interests Test and Liquidation Analysis***.

As describe above, section 1129(a)(7) of the Bankruptcy Code requires that each Holder of an Impaired Claim or Interest either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. Because the majority of the Debtor's assets have already been liquidated to Cash, the value of any distributions if the Debtor's Chapter 11 Case was converted to a case under Chapter 7 of the Bankruptcy Code would be less than the value of distributions under the Plan. This is because

3

conversion of the Chapter 11 Case to a chapter 7 case would require the appointment of a chapter 7 trustee, and in turn, such chapter 7 trustee's likely retention of new professionals. The "learning curve" that the trustee and new professionals would be faced with comes at a significant cost to the Estate and with a significant delay compared to the time of distributions under the Plan (and prosecution of Causes of Action). Worse still, a chapter 7 trustee would be entitled to significant fees relating to the distributions of the already monetized assets made to creditors. Accordingly, a portion of the cash currently available for distribution to holders of Claims would instead be paid to the chapter 7 trustee.

As a result, the Debtor believes that the Estate would have fewer funds to be distributed in a hypothetical chapter 7 liquidation than it would if this Plan is confirmed, and therefore holders of Claims in all Impaired Classes will recover less than in a hypothetical chapter 7 case. Accordingly, the Debtor believes that the "best interests" test of Bankruptcy Code Section 1129 is satisfied.

## SECTION 3.    TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND U.S. TRUSTEE FEES

3.1    ***Administrative Claims***.  In accordance with Bankruptcy Code Section 1123(a)(1), Administrative Claims have not been classified and are treated as described in this **Section 3**. Except as otherwise provided in this Plan, each Person holding an Allowed Administrative Claim shall receive Cash equal to the unpaid portion of such Allowed Administrative Claim as soon as practicable after the later of:  (a) the Effective Date; (b) the date on which such Person becomes the holder of such an Allowed Administrative Claim; or (c) the date or dates when that Claim is payable by its terms, consistent with past practice.  Allowed Administrative Claims shall be paid from Existing Debtor-Held Funds.

3.2    ***Priority Tax Claims***.  In accordance with Bankruptcy Code Section 1123(a)(1), Priority Tax Claims have not been classified and are treated as described in this **Section 3**.  Each Person holding an Allowed Priority Tax Claim shall receive, as determined by the Liquidating Trustee in his sole discretion:  (a) payment in Cash in full on the later of the Effective Date or the date such Claim becomes an Allowed Claim; or (b) Cash over a period not exceeding five (5) years after date of assessment of such Claim, with interest at a rate consistent with Bankruptcy Code Section 511, in periodic payments, having the value of such Claim as of the Effective Date. No Claim for or demand for any penalty relating to any Priority Tax Claim other than a penalty of the type specified in Bankruptcy Code Section 507(a)(8)(G) shall be Allowed and the holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Estate or any of the Assets.  Allowed Priority Tax Claims shall be paid from Assets available for payment of Priority Tax Claims.

3.3    ***U.S. Trustee Fees***.  U.S. Trustee Fees include fees and charges assessed against the Debtor under Chapter 1930 of title 28, United States Code.  All U.S. Trustee Fees will be paid in full by the Debtor or Liquidating Trustee, as the case may be, as they become due and shall continue to be paid until the earlier of the time (i) a final decree is entered closing the Chapter 11 Case, a Final Order converting the Chapter 11 Case to a  case under chapter 7 of the Bankruptcy Code or a Final Order dismissing the  Chapter 11 Case is entered; and (ii) the

Liquidating Trustee has met all of the U.S. Trustee's Operating Guidelines and Reporting Requirements for debtors in possession and trustees (unless the Bankruptcy Court orders otherwise). U.S. Trustee Fees shall be paid from Existing Debtor-Held Funds.

## SECTION 4.  SUMMARY OF TREATMENT OF CLAIMS AND ESTIMATED RECOVERIES

The following chart provides a summary of treatment of each Class of Claims (other than Administrative and Priority Tax Claims) and an estimate of the recoveries of each class. The treatment provided in this chart is for information purposes only and is qualified in its entirety by Section V of the Combined Plan and Disclosure Statement.

| Class | Estimated Allowed Claims | Estimated Recovery to Holders of Allowed Claims[1] |
|-------|--------------------------|---------------------------------------------------|
| 1 | $5,000 - $25,000 | 100% |
| 2 | $20-$26 million | 8% to 36% |

## SECTION 5.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

5.1  *Classification and Specification of Treatment of Claims*.  All Claims, except those described in **Section 3**, are placed in the Classes of Claims described in this **Section 5**, pursuant to Bankruptcy Code Section 1123(a)(1). This **Section 5** also specifies the treatment of such Classes of Claims and their impaired or unimpaired status, pursuant to Bankruptcy Code Sections 1123(a)(2) and 1123(a)(3).  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class to the extent that the Claim qualifies within the description of that different Class.  A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released, withdrawn, waived, or otherwise satisfied under this Plan.  Unless this Plan expressly provides otherwise, when a Class includes a subclass, each subclass is a separate Class for all purposes under the Bankruptcy Code, including voting and distribution.

This Plan will not provide any distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, payments by third parties.  Except as specifically provided in this Plan,

---

[1] The estimated percentage recovery is based upon, among other things, an estimate of the Allowed Claims in the Chapter 11 Case.  The actual amount of the Allowed Claims may be greater or lower than estimated. Thus, the actual recoveries may be higher or lower than projected depending upon, among other things, the amounts and priorities of Claims that are actually Allowed by the Bankruptcy Court and, importantly, the results of Causes of Action pursued by the Debtor and the Liquidating Trustee.

5

this Plan will not provide any distributions on account of a Claim, the payment of which has been assumed by a third party. Except as otherwise specifically provided in this Plan or by further order of the Court, all treatment, allowances, or payments of Claims which have been specified or otherwise fixed or required by order of the Court shall not be impaired by this Plan and the rights of the holders of such Claims as provided in such orders shall not be altered by this Plan. For the avoidance of doubt, any holder of a Claim or Interest may agree to less favorable treatment of such Claim or Interest than is set forth in this Plan.

5.2    ***Classes of Claims***.

5.2.1    Class 1 – Unsecured Priority Claims. This Class consists of all Allowed Unsecured Priority Claims. Each holder of an Allowed Unsecured Priority Claim shall receive Cash equal to the unpaid portion of such Allowed Unsecured Priority Claim as soon as practicable after the later of: (a) the Effective Date; or (b) the date on which such Person becomes the holder of such an Allowed Unsecured Priority Claim.

5.2.2    Class 2 – General Unsecured Claims. This Class consists of all Allowed Unsecured Claims. Each holder of an Allowed Unsecured Claim shall be entitled to receive such holder's *pro rata* share of Cash available after payment of or reserve for Allowed Claims described in Sections 3 and 5.2.1 of this Plan the later of: (a) the date or dates determined by the Liquidating Trustee, to the extent there is Cash available for distribution in the judgment of the Liquidating Trustee, having due regard for the anticipated and actual expenses, and the likelihood and timing, of the process of liquidating or disposing of the Assets; and (b) the date on which such Claim becomes Allowed.

5.2.3    Class 3 – Subordinated Claims. This Class consists of all Allowed Subordinated Claims. Each holder of an Allowed Subordinated Claim shall receive no distribution on account of such Claim.

5.2.4    Class 4 – Interests. Each holder of an Interest will not receive any distribution on account of such Interest. Each holder of an Interest shall not receive or retain an Interest or other property or interests of the Debtor on account of such Interest.

## SECTION 6.    ACCEPTANCE OR REJECTION OF THE PLAN

6.1    ***Impaired Classes Vote.*** In accordance with Bankruptcy Code Section 1126(c) and except as provided in Bankruptcy Code Section 1126(e), an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

6.2    ***Presumed Acceptance of this Plan***. Class 1 is Unimpaired under this Plan and is, therefore, conclusively presumed to have accepted this Plan pursuant to Bankruptcy Code Section 1126(f).

6.3    ***Presumed Rejection of this Plan***. Classes 3 and 4 are not entitled to receive or retain any property under this Plan and are, therefore, conclusively presumed to have rejected

6

this Plan pursuant to Bankruptcy Code Section 1126(g).

6.4     ***Voting Classes***.  Class 2 is Impaired, and the holders of Claims in that Class are entitled to vote on this Plan.  The Debtor will comply in all respects with Local Rule 3018-1. Original completed ballots accepting or rejecting the plan must be filed with the clerk of the Bankruptcy Court.

6.5     ***Nonconsensual Confirmation***.  The Debtor requests entry of a Confirmation Order under Bankruptcy Code Section 1129(a).  With respect to any Impaired Class, including any Class of Claims or Interests created pursuant to amendments or modifications to this Plan, that does not accept this Plan, the Debtor requests that the Bankruptcy Court confirm this Plan by Cramdown with respect to any such non-accepting Class or Classes at the Confirmation Hearing, and the filing of this Plan shall constitute a motion for such relief.

## SECTION 7.    MEANS FOR IMPLEMENTATION OF PLAN

7.1     ***Funding for this Plan***.  This Plan will be primarily funded by a combination of the Assets that are Cash and proceeds from non-cash Assets.  Certain funding may also be provided from other Trust Assets.

7.2     ***Formation of the Trust***.  On the Effective Date, (i) the Trust, on the terms of the Trust Agreement, shall be formed, (ii) the Liquidating Trustee shall execute the Trust Agreement, (iii) the Trust Agreement shall be effective, (iv) the Liquidating Trustee shall be authorized to implement the Trust, (v) the Assets shall be transferred to the Liquidation Trust. The Trust shall be established for the sole purpose of liquidating and distributing Trust Assets in accordance with Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  Consistent with requirements imposed by the IRS, all parties shall treat the Trust as a liquidating trust for all federal income tax purposes.  The Liquidation Trust shall not be deemed to be the same legal entity as the Debtor.

There shall be a total of one million (1,000,000) units of Liquidation Trust Beneficial Interests allocated to all holders of Allowed Claims, in a manner that permits them to receive the treatment specified by the Plan.  Beneficial interests in the Trust shall be non-transferrable except by will or under the laws of descent and distribution.

The Trust shall terminate after its liquidation, administration and distribution of the Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth herein or in the Trust Agreement, ***provided*** the Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date unless the Liquidating Trustee, for good cause, seeks an extension of the Trust.

7.3     ***Appointment of Liquidating Trustee; Deemed Resignation of Directors and Officers***.  The Confirmation Order shall provide for the appointment of the Liquidating Trustee. The Liquidating Trustee has been selected by the Debtor in consultation with its board of directors, and the initial Liquidating Trustee shall be Marshall Glade.  The Liquidating Trustee

7

shall be deemed the Estate's representative in accordance with Bankruptcy Code Section 1123 and shall have all powers, authority and responsibilities specified in this Plan and the Trust Agreement, including the powers of a trustee under Bankruptcy Code Sections 108, 704, and 1106 and Rule 2004 of the Bankruptcy Rules (including commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges), to the extent not inconsistent with the status of the Trust as a "liquidating trust" for federal income tax purposes within the meaning of Treasury Regulation 301. 7701-4(d). As set forth more fully in this Plan, the Liquidating Trustee shall be responsible for the liquidation of the remaining Assets for the benefit of Creditors in accordance with Bankruptcy Code Section 1123(a)(5) and 1129(a)(16), administration of this Plan and the wind-down of the Debtor and its Estate post-Effective Date. On the Effective Date, each member of the Debtor's Board of Directors and its officers shall be deemed to have resigned, each board member and officer shall have no ongoing decision-making role with respect to the Debtor, and the wind down of the Debtor shall become the general responsibility of the Liquidating Trustee.

The Liquidating Trustee's compensation shall be as follows: for each month following the entry of the Confirmation Order, the Liquidating Trustee shall receive, in addition to his reasonable expenses, the following fixed monthly compensation: months 1 to 5, $7,500 per month, months 6 to 12, $6,000 per month, months 13 to 24, $3,500 per month, for each month thereafter until the closing of the case, $3,000 per month.

7.4     *Vesting of Assets*. As of the Effective Date, and except as otherwise provided in this Plan, pursuant to the provisions of Bankruptcy Code Section 1141(b) and (c), all Assets shall vest in the Trust free and clear of all Claims, liens, encumbrances, charges, membership interests and other interests, subject to the terms and conditions of this Plan and the Confirmation Order, including the powers granted to the Liquidating Trustee. Pursuant to Bankruptcy Code Section 1123(a)(5) and subject to the terms of this Plan, the Liquidating Trustee shall sell or otherwise dispose of, and liquidate, or otherwise convert, to Cash, any non-Cash Assets.

7.5     *Corporate Action*. All matters provided under this Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of the Debtor, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement or further action by directors or officers of the Debtor.

7.6     *Continuing Existence*. From and after the Effective Date, the Debtor shall continue in existence for the purposes of (i) winding up its affairs as expeditiously as reasonably possible, (ii) liquidating, by conversion to Cash, or other methods, all remaining Assets, as expeditiously as reasonably possible, (iii) enforcing and prosecuting claims, interests, rights and privileges of the Estate, including, the prosecution of Causes of Action, (iv) resolving disputed Claims, (v) administering this Plan, and (vi) filing appropriate tax returns. Following the Effective Date, the Debtor shall not engage in any business activities or take any actions, except those necessary to consummate this Plan and wind up the affairs of the Debtor.

7.7     *Causes of Action*. Except as otherwise set forth in this Plan, all Causes of Action of the Debtor including Avoidance Actions and General Litigation Claims, shall be preserved

8

and survive confirmation of this Plan and the commencement and prosecution of such Causes of Action by the Liquidating Trustee or otherwise shall not be barred or limited by *res judicata* or any estoppel, whether judicial, equitable or otherwise. The Liquidating Trustee shall have the authority and standing to commence and prosecute Causes of Action of the Debtor and Estate for the benefit of Creditors. Nothing in this Plan shall be deemed a "voluntary assignment" of any Cause of Action by the Debtor.

7.8    ***Agreements, Instruments, and Documents***. All organizational agreements, charter documents, instruments, and documents required under this Plan to be executed or implemented, together with such others as may be necessary, useful or appropriate in order to effectuate this Plan shall be executed on or before the Effective Date or as soon thereafter as is practicable. Such documentation shall include any charter document revisions needed to comply with Bankruptcy Code Section 1129(a)(6).

7.9    ***Bar Date for Administrative Claims***. Except to the extent this Plan or the Court has fixed or does fix a different date, all requests for payment of Administrative Claims must be filed no later than thirty (30) days after the Effective Date. All Administrative Claims for which a request for payment is not timely filed shall be forever barred. Objections to each such claims may be filed in accordance with the Bankruptcy Rules. The Court shall determine all such Administrative Claims.

7.10    ***Closing of the Debtor's Chapter 11 Case***. When all disputed Claims filed against the Debtor have become Allowed Claims or have been disallowed, and all Assets have been liquidated and converted into Cash (or abandoned), and such Cash has been distributed in accordance with this Plan, or at such earlier time as the Liquidating Trustee deems appropriate, the Liquidating Trustee shall request that the Court to enter a final decree and otherwise close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

7.11    ***Corporate Dissolution***. Upon the distribution of all Assets pursuant to this Plan and the filing by the Liquidating Trustee of a certification to that effect with the Court (which may be included in the application for the entry of the final decree), the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith, ***provided***, ***however***, that the Liquidating Trustee may take appropriate action to dissolve the Debtor under applicable law. From and after the Effective Date, the Debtor shall not be required to file any document, or take any action, to withdraw its business operations from any states where the Debtor previously conducted business.

7.12    ***Effective Date Events***. On the Effective Date, the following actions shall take place: (a) all payments to be made on the Effective Date and all other actions to be taken on or before the Effective Date pursuant to this Plan by the Debtor shall be made or taken or duly provided for; (b) any documents, including orders or agreements, necessary to implement this Plan as of the Effective Date must be executed; and (c) all other events and actions specified in this Plan to occur on the Effective Date shall be deemed to have accrued. Within seven (7) days of the occurrence of the Effective Date, the Liquidating Trustee shall file a notice of occurrence of the Effective Date with the Bankruptcy Court.

## SECTION 8.    PROVISIONS REGARDING LIQUIDATING TRUSTEE

8.1    ***General Powers and Duties of the Liquidating Trustee***.  The Liquidating Trustee will act for the Creditors in a fiduciary capacity as applicable to a board of directors and shall be responsible for the liquidation of the remaining Assets, administration of this Plan and wind-down of the Debtor and its Estate post-Effective Date, subject to the provisions of this Plan. Except to the extent conditioned by this Plan, the powers and duties of the Liquidating Trustee shall include:

(a)    to invest Cash in accordance with Bankruptcy Code Section 345, and withdraw and make distributions of Cash to holders of Allowed Claims;

(b)    to receive, manage, invest, supervise, protect, liquidate or otherwise dispose of the Assets;

(c)    to propose a wind-down budget, and update the same from time to time;

(d)    to engage attorneys, consultants, agents, employees and all professional persons to assist the Liquidating Trustee with respect to the Liquidating Trustee's responsibilities without the need for Court approval;

(e)    to pay all expenses in connection with administering this Plan and winding down the affairs of the Debtor in each case from the Assets, subject to the terms of this Plan without further notice, hearing or approval of the Court.

(f)    to execute and deliver all documents, and take all actions, necessary to consummate this Plan and wind-down the Debtor's business, including, to effectuate the dissolution of the Debtor;

(g)    to coordinate the storage and maintenance of the Debtor's books and records;

(h)    to oversee compliance with the Debtor's accounting, finance and reporting obligations;

(i)    to oversee the filing of final tax returns, audits and other corporate dissolution documents if required;

(j)    to object to Claims, compromise and settle Claims;

(k)    to act on behalf of the Debtor and the Estate in all litigation, adversary proceedings, arbitration, and contested matters (including, any Causes of Action), then pending or that can be commenced in the Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, dispute or adjust any actions involving the Assets or Trust Assets that could arise or be asserted at any time under the Bankruptcy Code or otherwise, unless otherwise waived or relinquished in this Plan;

(l)    to implement and enforce all provisions of this Plan; and

*ACTIVE 50889487v4*

(m)      to use such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to this Plan or Court order or as may be necessary and proper to carry out the provisions of this Plan.

8.2      ***Compensation of Liquidating Trustee and his Professionals***.  The Liquidating Trustee and Persons employed by the Liquidating Trustee shall be compensated and reimbursed for their reasonable and necessary fees and out-of-pocket expenses on a regular basis from the Assets without the need for filing retention applications or fee applications.

8.3      ***No Agency Relationship***.  The Liquidating Trustee shall not be deemed to be the agent of any of the holders of Claims in connection with the funds held or distributed pursuant to this Plan.  The Liquidating Trustee shall not be liable for any mistake of fact or law or error in judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct or breach of fiduciary duty on the part of the Liquidating Trustee.  The Liquidating Trustee shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estate against any and all claims arising out of his duties under this Plan, except to the extent his actions constituted gross negligence or willful misconduct or breach of fiduciary duty.  The Liquidating Trustee may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he believes to be genuine and to have been signed or presented by the proper party or parties.  The Liquidating Trustee may rely upon information previously generated by the Debtor and provided by former employees of the Debtor.

8.4      ***Reporting***.  Until a final decree closing the Chapter 11 Case is entered, the Liquidating Trustee shall comply with any reporting requirements established pursuant to the guidelines of the U.S. Trustee or applicable law.

8.5      ***Resignation, Death or Removal of Liquidating Trustee***.  The Liquidating Trustee may resign at any time upon not less than thirty (30) days' written notice to the Debtor's former officers and directors.  In the event of the resignation, removal, death or incapacity of the Liquidating Trustee or any other vacancy in the position of Liquidating Trustee, the Debtor's former officers and directors shall select a successor.  No successor Liquidating Trustee hereunder shall in any event have any liability or responsibility for the acts or omissions of his or her predecessors.

## SECTION 9.   EXECUTORY CONTRACTS

9.1      ***Rejection of Contracts.***  Except as otherwise set forth in this Plan, each executory contract and unexpired lease of the Debtor that has not previously been assumed or rejected shall be rejected as of the Effective Date.  Any Claim for damages arising from rejection of any executory contract or unexpired lease under this Plan must be filed with the Court within the earlier of thirty (30) days after the Effective Date or such other deadline established by the Court. Any Claim arising from the rejection of an executory contract or unexpired lease not filed within such time will be forever barred from receiving any distribution under this Plan or asserting any Claims against the Debtor, the Estate, the Trust, or the Liquidating Trustee.

11

9.2     ***Insurance Contracts***.  To the extent any insurance policies issued to the Debtor, fidelity bonds, or insurance agreements to which the Debtor is a party entered into prior to the Petition Date constitute executory contracts, then, notwithstanding anything contained in this Plan, this Plan will constitute a motion to assume such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption, pursuant to § 365(a) of the Bankruptcy Code.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtor existing as of the Effective Date with respect to each such insurance policy, fidelity bond, or agreement.

9.3     ***Compensation and Benefit Programs***.  To the extent not previously terminated, all employment and severance agreements and policies and all employee compensation and benefit plans, policies and programs of the Debtor applicable generally to its employees and officers in effect on the Effective Date shall be terminated as of the Effective Date.

9.4     ***Reservation of Rights as to Executory Contracts***. Nothing contained in this Plan shall constitute an admission by the Debtor that any contract or lease is in fact an executory contract or unexpired lease or that the Debtor has liability thereunder. If there is a dispute whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Liquidating Trustee shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

## SECTION 10.   DISTRIBUTION PROVISIONS

10.1     ***No Distributions on Account of Claims That Have Not Become Allowed Claims***.  Notwithstanding any other provision of this Plan, no payment or distribution shall be made with respect to any Claim that has not become an Allowed Claim.

10.2     ***Reserves for Claims That Have Not Been Allowed***.  Distributions on account of Claims that have not become Allowed Claims shall be governed by the following provisions:

(a)      The Liquidating Trustee shall not be required to withhold funds or consideration, designate reserves, or make other provisions for the payment of any Claims that have been waived, withdrawn, or disallowed by a Final Order of the Court.

(b)      With respect to Claims that have not become Allowed Claims and that are not governed by subparagraph (a) above, the Liquidating Trustee shall reserve sufficient funds to allow for a distribution in accordance with the terms of this Plan, on account of the distribution attributable to such holders' Claims or as otherwise provided pursuant to any order of the Court with respect to the amount, if any, to be reserved.  At the request of the Liquidating Trustee or any holder of a Claim, the Court may, after notice and a hearing, fix the amount of any Claim for purposes of establishing reserves.  In the absence of an Order establishing a specific reserve amount, the Liquidating Trustee, may in his sole discretion comply with this **Section 10.2** by reserving $100 for each Claim not stating an amount.  Further, with respect to Claims covered by insurance, the Liquidating Trustee may establish reserves based solely on any deductible, self-insured retention amount, or that part of a Claim not otherwise covered by insurance.  Cash

12

withheld pursuant to this subparagraph will be held in a segregated, interest-bearing fund or funds. Such Cash will be released when and if Claims are Allowed and disallowed and shall be applied in accordance with this Plan.

10.3    ***Distribution of Plan Consideration.***    The Trust shall make distributions to holders of beneficial interests in accordance with this Plan. The Liquidating Trustee shall disburse all consideration to be distributed under this Plan and shall act as a disbursing agent.

10.4    ***Unclaimed Cash***.  If any Person entitled to Cash under this Plan cannot be located on the date a distribution is to be made, such Cash will be set aside and held in a segregated fund to be maintained by the Liquidating Trustee. If such Person is located within ninety (90) days of the date of distribution, such Cash will be paid to such Person. If such Person cannot be located within ninety (90) days of the date of distribution, any such Cash and accrued interest thereon shall be released to the Liquidating Trustee and distributed in accordance with this Plan and such Person shall not be entitled to any amounts in connection with such distribution or any subsequent distribution and the Claims of such person to which such Cash relates shall be discharged and forever barred from assertion against the Debtor, the Estate, the Assets, the Trust, or the Liquidating Trustee. Nothing contained in this Plan shall require the Liquidating Trustee to attempt to locate such Person. It is the obligation of each Person claiming rights under this Plan to keep the Liquidating Trustee advised of their current address by sending written notice of any changes to the Liquidating Trustee.

10.5    ***Unnegotiated Distribution Checks***.  Checks or drafts issued pursuant to this Plan to Persons holding Allowed Claims and not presented for payment within ninety (90) days following mailing thereof to the last known address of such Person shall be deemed nonnegotiable thereafter. Any Claim in respect of such distribution shall be discharged and forever barred from assertion against the Debtor, the Estate, the Assets, the Trust, or the Liquidating Trustee. Any distribution which is deemed nonnegotiable shall re-vest with the Trust and be available for distribution consistent with this Plan.

10.6    ***Fractional Dollars***.  Any other provision of this Plan notwithstanding, no payments of fractional dollars will be made to any holder of an Allowed Claim. Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the Liquidating Trustee may, in his discretion, round such fraction up or down and make payments accordingly.

10.7    ***Distribution Dates***.  In addition to any distribution times established under this Plan, the Liquidating Trustee shall make a good faith determination at six month intervals after the Effective Date as to the advisability of making interim distributions and may make interim distributions in his discretion. Whenever any distribution to be made under this Plan is due on a day other than a Business Day, such distribution will instead be made, without penalty or interest, on the next Business Day.

10.8    ***Bankruptcy Code Sections 509 and 510***.  Distributions under this Plan will be governed by the provisions of Bankruptcy Code Sections 509 or 510 where applicable.

10.9    ***Distributions to be Applied First to Administrative and Priority Claims***.  To the

13

extent any holder of an Allowed Claim receives any distribution(s) under this Plan on account of Claims, said distribution(s) shall be applied by the recipient first to satisfy any Allowed Administrative Claims, Allowed Priority Tax Claims, or Allowed Unsecured Priority Claims and, only after all such Claims are fully satisfied, to any Allowed Claims not entitled to such priority.

10.10   *Estimation of Claims*.  The Liquidating Trustee may, at any time, request that the Bankruptcy Court (or District Court, as applicable) estimate any Claim not expressly Allowed by the terms of this Plan and otherwise subject to estimation under Bankruptcy Code Section 502(c) and for which the Debtor may be liable under this Plan, including any Claim for taxes, to the extent permitted by Bankruptcy Code Section 502(c).  In the event that the Bankruptcy Court (or District Court, as applicable) estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court (or District Court, as applicable).  If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated by the Bankruptcy Court (or District Court, as applicable) and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court (or District Court, as applicable).

10.11   *Chapter 5 Provisions*.  No distribution or payment shall be made to any holder of an Allowed Claim who is also a potential defendant in an Avoidance Action until a decision is made by the Liquidating Trustee not to commence the potential Avoidance Action, or, in the event the potential Avoidance Action is commenced by the Liquidating Trustee, until resolution of such Avoidance Action.  Notwithstanding this **Section 10.11**, the making of a distribution to such potential defendant or the lack of any objection filed to such Allowed Claim on the basis of such potential Avoidance Action, shall not constitute a waiver of any rights of the Debtor or the Liquidating Trustee, as the case may be.  For purposes of this Plan, such distribution or payment on account of such Allowed Claim shall be held in reserve as if it were a disputed Claim.

10.12   *Third-Party Agreements*.   Except as set forth herein, all subordination and intercreditor agreements entered into by any parties in interest shall be enforceable to the extent permitted by applicable law.

10.13   *Objections to Claims*.  Objections to Claims shall be filed by the Liquidating Trustee with the Bankruptcy Court within one hundred eighty (180) days after the Effective Date of this Plan, ***provided, however***, the Liquidating Trustee may not object to any Claim once it becomes an Allowed Claim.  The time period for filing objections to Claims shall automatically renew for successive periods of one hundred eighty (180) days each until the earlier of (i) the date upon which all Claims have been Allowed or disallowed or (ii) the date fixed by the Court upon motion of the Liquidating Trustee or a holder of a Claim.  Nothing contained herein shall limit the right of the Liquidating Trustee to object to Claims, if any, filed or amended after the Effective Date.

10.14   *Settlement of Causes of Action and Disputed Claims*.  Pursuant to Bankruptcy

14

Rule 9019(b), the Liquidating Trustee may settle any disputed Claim or Cause of Action without notice or Court approval. For the avoidance of doubt, the Liquidating Trustee shall have the authority to compromise or settle any objections to Claims without approval of the Court.

10.15  ***Setoffs.***  The Liquidating Trustee may, pursuant to and in accordance with Bankruptcy Code Section 553 or applicable nonbankruptcy law, except as otherwise set forth in this Plan, set off or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Claim, the claims, rights and Causes of Action of any nature that the Debtor may hold against the holder of such Allowed Claim, ***provided*** the Liquidating Trustee gives the holder of such Allowed Claim notice of the proposed setoff or recoupment and the holder of such Allowed Claim does not object to the proposed setoff or recoupment within thirty (30) days; ***provided further***, if the holder of such Allowed Claim timely objects to the proposed setoff or recoupment, the setoff or recoupment may not be effectuated without prior approval of the Court; ***provided further***, neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or Liquidating Trustee of any such claims, rights and Causes of Action that the Debtor may possess against such holder.

10.16  ***Distribution Cap.***  Except to the extent consistent with the treatment set forth in this Plan, no holder of an Allowed Claim shall receive in respect of that Claim any distribution in excess of the Allowed amount of that Claim.

10.17  ***De Minimis Distributions***.  Notwithstanding anything to the contrary contained in this Plan, if the amount of Cash to be distributed to the holder of an Allowed Claim is less than $20, the Liquidating Trustee may hold the Cash distributions to be made to such holder until the aggregate amount of Cash to be distributed to such holder is in an amount equal to or greater than $20.  Notwithstanding the preceding sentence, if the amount of Cash distribution to such holder never aggregates to more than $20, then on the final distribution date, the Liquidating Trustee shall distribute such Cash to the holder entitled thereto. Furthermore, if the Liquidating Trustee, in his reasonable discretion, determines that a final distribution will not result in a material distribution to the holders of Allowed Claims, the Trustee shall be entitled to donate any remaining Cash to a charitable organization of his choosing.

10.18  ***Withholding Taxes***.  In connection with this Plan, to the extent applicable, the Liquidating Trustee shall comply with all withholding and reporting requirements imposed on it by federal, state and local taxing authorities, and all distributions shall be subject to such requirements.  All Claims held by any holder of a Claim that fails to provide information reasonably requested by the Liquidating Trustee in connection with such matters shall be discharged and forever barred from assertion against the Debtor or the Assets.

10.19  ***Distribution Record Date.***  Except as otherwise provided in a Final Order of the Court or as otherwise stipulated by the Debtor or Liquidating Trustee, as applicable, the transferees of Claims transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date.  The Debtor and Liquidating Trustee

15

shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. In making any distribution with respect to any Claim, the Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes, only the Person listed on the proof of claim Filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that are known to the Liquidating Trustee, as of the Distribution Record Date.

## SECTION 11. CONDITIONS PRECEDENT

11.1 ***Conditions to Confirmation.*** Confirmation of this Plan shall not occur and the Court shall not enter the Confirmation Order unless (i) all of the requirements of the Bankruptcy Code for confirmation of this Plan shall have been satisfied; and (ii) the Plan Documents shall be in form and substance satisfactory to the Debtor. Without limitation, the Confirmation Order shall empower and authorize the Debtor to take or cause to be taken, prior to the Effective Date, all actions which are necessary to enable them to implement the provisions of this Plan and to satisfy all other conditions precedent to the effectiveness of this Plan.

11.2 ***Conditions to Effective Date***. The Effective Date shall not occur unless: (a) the Court shall have entered the Confirmation Order as a Final Order, in form and substance reasonably satisfactory to the Debtor; (b) the Plan Documents, shall be in form and substance satisfactory to the Debtor; and (c) no request for revocation of the Confirmation Order under Bankruptcy Code Section 1144 shall have been made and still be pending.

11.3 ***Nonfulfillment of Conditions***. In the event that the Debtor determine that the conditions to Confirmation or to the Effective Date set forth in the immediately foregoing paragraphs of this Plan cannot be satisfied and should not, in its sole discretion, be waived, or if the Effective Date does not occur on or before September 1, 2020 (unless this date is extended by the Liquidating Trustee), this Plan shall be null and void and shall have no force nor effect, and this Plan shall be deemed withdrawn.

## SECTION 12. EFFECTS OF PLAN CONFIRMATION

12.1 ***Satisfaction of Claims.*** Holders of Claims shall receive the distributions provided for in this Plan and other treatment set forth herein, if any, in full settlement and satisfaction of the Debtor's obligations thereunder.

12.2 ***Interest on Claims, Fees, Costs, Charges.*** Except as specifically provided for in this Plan or Bankruptcy Code Section 506(b), interest and postpetition fees, costs and charges shall not accrue on Claims and no holder of a Claim shall be entitled to interest, fees, costs or charges accruing on or after the Petition Date on any Claim.

**12.3 *Exculpation.* Except as specifically provided in this Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim, obligation, cause of action or liability for any Exculpated Claim, except for gross negligence or willful misconduct, but in all respects such Persons shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. Each Exculpated Party has, and upon**

16

Confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with the Bankruptcy Code and applicable non-bankruptcy law with regard to the solicitation of votes pursuant to this Plan, and, therefore, shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or distributions made pursuant to this Plan.*Injunction*.  Except as otherwise provided in this Plan or Confirmation Order, as of the Effective Date all Persons that hold a Claim are permanently enjoined from taking any of the following actions against (i) the Exculpated Parties; (ii) the Liquidating Trustee; (iii) the Trust; (iv) any successors or professionals of the foregoing; or (v) any Assets or any other Trust Assets, on account of any Claim: (1) commencing or continuing in any manner any action or other proceeding with respect to a Claim; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order with respect to a Claim; (3) creating, perfecting or enforcing any lien or encumbrance with respect to a Claim; (4) commencing or continuing any action in any court other than the Bankruptcy Court absent a showing the Bankruptcy Court lacks jurisdiction; or (5) commencing or continuing any action that does not comply with or is inconsistent with this Plan.

12.5    ***Post-Effective Date Effect of Evidences of Claims***.    Notes, shareholder certificates, and other evidences of liens or Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions or rights, if any, contemplated by this Plan.

12.6    ***Surrender of Instruments and Release of Liens***.  Except as otherwise provided in this Plan, each holder of an instrument evidencing a Claim against the Debtor or any of the property of the Debtor shall, if requested by the Liquidating Trustee, surrender such instrument to the Liquidating Trustee.  The Liquidating Trustee may withhold distributions under this Plan to or on behalf of any holder of such Claim unless and until such instrument is received or the non-availability of such instrument is established to the satisfaction of the Liquidating Trustee. Each Person who is to receive distributions under this Plan in complete satisfaction of a Secured Claim shall if requested by the Liquidating Trustee, execute and deliver a release of its liens and security interests to the Liquidating Trustee.  The Court may enter an order requiring the execution and delivery of a release at the cost of such Person by the Liquidating Trustee and providing that such act when so done shall have like effect as if done by such Person or any other appropriate order.

12.7    ***Term of Stays***.  **Except as otherwise provided in this Plan the stay provided for in the Debtor's Chapter 11 Case pursuant to Bankruptcy Code Section 362, shall remain in full force and effect until the Chapter 11 Case is closed.**

12.8    ***No Discharge***.    Pursuant to Bankruptcy Code Section 1141(d)(3), the Confirmation Order will not discharge the Debtor of any debts.

12.9    ***SEC Rights Preserved***.  Notwithstanding any provision herein to the contrary or an abstention from voting on the Plan, no provision of the Plan, or any order confirming the Plan (i) releases the Debtor or any non-debtor person or entity from any Claim or cause of action of the U.S. Securities and Exchange Commission ("SEC"); or, (ii) enjoins, limits, impairs or delays

17

the SEC from commencing or continuing any Claims, causes of action, proceedings or investigations against the Debtor or any non-debtor person or entity in any forum, provided, however, that collection on any monetary claim by the SEC against the Debtor will be subject to the provisions of the Plan.

12.10 ***Retention of Jurisdiction***. Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Court will retain jurisdiction to the fullest extent permitted by law, including jurisdiction to enter any orders or to take any action specified in this Plan, and including:

(a) To determine any motion, adversary proceeding, application, contested matter, and other litigated matter concerning the Debtor, the Estate, the Trust, the Assets or the Trust Assets pending on or commenced after the Confirmation Date;

(b) To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases;

(c) To enter orders with respect to distributions under this Plan;

(d) To consider Claims, including Administrative Claims, Priority Tax Claims, Other Secured Claims, Priority Unsecured Claims, Unsecured Claims and Subordinated Claims or the allowance, classification, priority, compromise, estimation, or payment thereof;

(e) To enter, implement, or enforce such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f) To issue injunctions, enter other Orders, and take such other actions necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order or any other Order of this Court;

(g) To hear and determine any application to modify this Plan, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any Order of the Bankruptcy Court, including the Confirmation Order, in such a manner necessary to carry out the purposes and effects thereof;

(h) To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(i) To take any action and issue such Orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release or injunction provisions set forth herein or in this Plan, or to maintain the integrity of this Plan following consummation;

(j) To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

18

(k)　　To hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code Sections 346, 505, and 1146;

(l)　　To construe and enforce prior orders of the Court in the Chapter 11 Case;

(m)　　To recover all Assets and property of the Estate, wherever located; and

(n)　　To enter a final decree closing the Chapter 11 Case.

12.11　*Failure of the Court to Exercise Jurisdiction*.　If the Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Case, including with respect to the matters set forth above in **Section 10.11**, this Plan shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## SECTION 13.  MISCELLANEOUS PROVISIONS

13.1　*Exemption from Transfer Taxes*.　Pursuant to Bankruptcy Code Section 1146(a), the creation or amendment of any mortgage, deed of trust or other security interest, the making or assignment of any lease or the making or delivery of any deed or other instrument of transfer, under, in furtherance of or in connection with this Plan, and any sale of the Assets, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

13.2　*Modification of Plan*.　The Debtor may modify this Plan prior to the entry of the Confirmation Order *provided* this Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements of Bankruptcy Code Section 1125.　After the entry of the Confirmation Order, the Debtor or the Liquidating Trustee, may modify this Plan to remedy any defect or omission or to reconcile any inconsistencies in this Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of this Plan, *provided*: (i) the Debtor or Liquidating Trustee, as applicable, obtain approval of the Bankruptcy Court for such modification, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, treatment, or distributions of any Class under this Plan.

13.3　*Revocation of this Plan*.　The Debtor reserves the right to revoke or withdraw this Plan, prior to the Confirmation Date, for any reason they may deem appropriate.　If this Plan is revoked or withdrawn, then this Plan shall be null and void in all respects and nothing contained in this Plan shall constitute a waiver or release of any claims by or against, the Debtor, or prejudice in any manner the rights of the Debtor.

13.4　*Preservation and Application of Insurance.*　The terms of this Plan shall not diminish or impair in any manner the enforceability and coverage of any insurance policies of fidelity bonds (and any agreements, documents, or instruments relating thereto) that may cover Claims or any claims against directors, trustees or officers of the Debtor, or any other Person, other than as expressly as set forth herein.　All of the Debtor's insurance policies, fidelity bonds, or third party policies naming the Debtor as an additional insured, and the proceeds thereof shall be available to satisfy Claims to the extent such insurance policies cover such Claims.　In

19

addition, such insurance policies and proceeds thereof shall be available to satisfy Claims estimated pursuant to Bankruptcy Code Section 502(c) or in accordance with this Plan. For the avoidance of doubt, confirmation of the Plan and the occurrence of the Effective Date shall not affect, reduce, discharge or diminish coverage, or provide a defense to any insurer, or trigger any exclusion under any policy, including, without limitation, any insured vs. insured exclusion.

13.5    *Votes Solicited in Good Faith*. Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on this Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to Bankruptcy Code Section 1125(e) will have no liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on this Plan.

13.6    *Successors and Assigns, Binding Effect*. The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person, including with respect to the Debtor, any chapter 7 or chapter 11 trustee. The provisions of this Plan shall bind all holders of Claims, whether or not they have accepted this Plan.

13.7    *Computation of Time*. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

13.8    *Notices*. All notices or requests in connection with this Plan shall be in writing and given by mail or overnight mail addressed to counsel to the Debtor as set forth on the front page of this Plan and to the Liquidating Trustee as set forth in the Plan Supplement. All notices and requests to holders of Claims shall be sent to them at their last known address or to the last known address of their attorney of record in these Chapter 11 Case, if any. Any Person may designate in writing any other address for purposes of this **Section 13.8**, which designation will be effective upon receipt by the Debtor.

13.9    *Severability*. If, prior to confirmation, any term or provision of this Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power, on joint request of the Debtor, to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.

13.10   *Validity and Enforceability*. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms. Should any provision in this Plan be determined by the Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

13.11   *Plan Supplement*. Any exhibits, schedules or other Plan Documents not filed with this Plan may be contained in the Plan Supplement as necessary to implement the terms of

20

this Plan.

13.12    ***Controlling Documents***.  In the event and to the extent that any provision of this Plan is inconsistent with the provisions of the Disclosure Statement, the provisions of this Plan shall control and take precedence.  In the event and to the extent that any provision of this Plan is inconsistent with the Confirmation Order, the Confirmation Order shall control.

13.13    ***Reservation of Rights***.  Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the occurrence of the Effective Date.

13.14    ***Substantial Consummation***.  Upon the Effective Date, this Plan will be deemed substantially consummated for purposes of Bankruptcy Code Sections 1101 and 1127(b).

13.15    ***Governing Law***.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated in this Plan, the laws of the State of Georgia, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of this Plan and transactions consummated or to be consummated in connection therewith.

June 13, 2020                              IFS Securities, Inc.


                                           __/s/ Alexys McKenzie_____

                                           By: Alexys McKenzie

                                           Title: Chief Executive Officer

21