IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re:<br><br>IFS SECURITIES, INC.,<br><br>    Debtor. | Chapter 11<br><br>Case No. 20-65841-LRC |

**OBJECTION OF INTL FCSTONE FINANCIAL, INC. TO DEBTOR'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT OF CLAIMS AGAINST IFS GROUP, INC., IFS ADVISORY, LLC, AND ALEXYS MCKENZIE**

INTL FCStone Financial, Inc. ("INTL"), by and through undersigned counsel, hereby objects (this "Objection") to the *Debtor's Motion to Approve Compromise and Settlement of Claims Against IFS Group, Inc., IFS Advisory, LLC, and Alexys McKenzie* (Doc. 69) (the "Settlement Motion")[1] filed by IFS Securities, Inc., as debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 proceeding (the "Case"). In support of this Objection, INTL states as follows:

### JURISDICTION AND VENUE

1.    The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The bases for the relief requested herein are § 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them by the Settlement Motion.

#### BACKGROUND

4. On April 24, 2020, the Debtor filed the above-styled chapter 11 bankruptcy case (this "Case").

5. Before closing its doors in August 2019 and withdrawing its registration with SEC approval on February 28, 2020, the Debtor was a registered securities broker-dealer and member of FINRA. Before the Debtor ceased operating, INTL was one of IFS's clearing brokers for securities transactions, including clearing transactions in Treasury securities.

6. As previously noted, the Debtor and INTL are parties to that certain *Introducing Broker Dealer Tri-Party Clearing Agreement* entered on or about June 9, 2008 (the "Clearing Agreement"). (Doc. 26-1 at ¶ 23; Doc. 26-2 at Ex. A § 12(d)).

7. On or about March 5, 2020, the Debtor filed its Statement of Claim (the "Arbitration Claim") against INTL, thereby commencing that certain Financial Industry Regulatory Authority ("FINRA") arbitration proceeding styled *IFS Securities, Inc. v. INTL FCStone Financial, Inc.*, FINRA Dispute Resolution Arbitration No. 20-00751 (Mar. 5, 2020) (the "Pending Arbitration"). (*See* Doc. 26, 1). On May 29, 2020, INTL filed its *Answer to Claimant's Statement of Claim, Counterclaim Against IFS Securities Inc., and Respondent's Third-Party Claim Against Alex McKenzie* after obtaining stay relief from this Court (the "INTL Answer"). (*See* Doc. 57). As set forth in the INTL Answer, INTL, *inter alia*, vigorously disputes the Debtor's claims and asserts a counterclaim and cross-claim against the Debtor and Alexys McKenzie (the Debtor's CEO) ("McKenzie"), respectively, seeking damages in the amount of $1,320,651.23. In connection therewith, INTL filed a proof of claim in the amount of $1,320,651.23 against the Debtor's bankruptcy estate on June 10, 2020. (*See* Claim 6).

8. On May 14, 2020, the Debtor filed its *Combined Disclosure Statement and Plan of Liquidation* (the "Plan"), pursuant to which the Debtor proposes, *inter alia*, to liquidate its

assets for the benefit of its bankruptcy estate. As set forth in the Plan, one of the primary assets to be liquidated for the benefit of the Debtor's estate is a claim against its parent company, IFS Group, Inc. ("Group"). The Debtor's Plan, as subsequently amended (*See* Doc. 73), has not been scheduled for confirmation as of the date of this Objection and, per the court's recent comments, will not be scheduled until after the court has adjudicated the Objecting Creditors' (as hereinafter defined) Trustee Motion (as hereinafter defined).

9. On June 10, 2020, the Debtor filed its Settlement Motion, seeking authority to compromise and settle claims against Group, IFS Advisory, LLC ("Advisory"), and McKenzie (together with Group and Advisory, the "Insiders") pursuant to the terms and provisions of the Settlement Agreements attached to the Settlement Motion as Exhibits B (Settlement Agreement with Group), C (Settlement Agreement with Advisory, and D (Settlement Agreement with McKenzie) (collectively, the "Settlement Agreements", each, a "Settlement Agreement"). Each of the Settlement Agreements was executed by McKenzie on behalf of each of the Insiders.

10. As the Debtor's CEO, McKenzie is an insider of the Debtor as that term is defined in the Bankruptcy Code. *See* 11 U.S.C. § 101(31). Group "is the current owner of the equity interests in the" Debtor, and "McKenzie and others own IFS Group. McKenzie owns the greatest number of shares of IFS Group of any single owner." (Doc. 10, ¶ 13). Accordingly, Group appears to be an insider of the Debtor, as that term is defined by the Bankruptcy Code. The Debtor has not disclosed its relationship with Advisory; however, based upon the Debtor's proposed Settlement Agreement with Advisory, which proposes to settle a preference claim against Advisory that accrued during the one-year look back period for preferential insider transactions (*See* 11 U.S.C. § 547(b)(4)(B)), it is apparent that Advisory is also an insider of the Debtor.

11. In its Settlement Motion, the Debtor summarizes its proposal to settle and compromise its claims against the Insiders as follows:

- Group will make payments totaling $1,000,000.00 in settlement of all claims held by the estate. Provided that Group performs its obligations under the settlement agreement, it shall receive a release of claims. After the initial $300,000 payment, Group will make seven yearly payments of $100,000 apiece. After the initial payment, Group shall have the right to prepay the balance of the payments in exchange for a 25% discount of the amounts outstanding.

- Advisory will make payments totaling $70,715.00 in settlement of all claims held by the estate. Provided that Advisory performs its obligations under the settlement agreement, it shall receive a release of claims. After the initial $10,102 payment, Advisory make six yearly payments of $10,102. Advisory shall have the right to prepay the balance of the payments in exchange for a 25% discount of the amounts outstanding.

- McKenzie will make a payment of $50,000.00[2] in settlement of all claims held by the estate. Further, McKenzie will provide assistance to the bankruptcy estate in prosecuting claims against third parties. Provided that McKenzie performs his obligations under the settlement agreement, he shall receive a release of claims.

(Doc. 69, 3–4).

12. As set forth in the Settlement Motion and each of the Settlement Agreements, the proposed settlement amounts are based upon the amounts of transfers the Debtor made to the Insiders during the one-year look back period for preference payments made to insiders of the Debtor under 11 U.S.C. § 547. Although the Debtor asserts that these settlement amounts were only reached by its Chief Restructuring Officer, Marshall Glade ("CRO"), "[a]fter negotiations and discovery, [as well as] a review of the defenses asserted by the [Insiders]", it is unclear from

---

[2] INTL notes that this amount is less than 10% of the Debtor's transfers to Mr. McKenzie during the year preceding the Petition Date.

the Settlement Motion and the Settlement Agreements exactly what the scope of Mr. Glade's investigation and discovery was and whether Mr. Glade's investigation of claims against the Insiders extended beyond the one-year look back period for preferential insider transactions to capture, for example, potential fraudulent transfers to the Insiders that could be prosecuted for the benefit of the Debtor's estate pursuant to 11 U.S.C. §§ 544 and 548.  While it is entirely possible the Debtor's CRO conducted a fulsome investigation into such claims for the benefit of the Debtor's estate, the record before the Court simply does not support this conclusion.  This is particularly troubling in light of the *Joint Motion by Creditors R. Bryan Edwards and Craig Walker for Appointment of a Trustee Pursuant to 11 U.S.C. §§* 1104(a)(1) and 1104(a)(2) (the "Trustee Motion") (Doc. 67), wherein alleged creditors R. Bryan Edwards and Craig Walker (the "Objecting Creditors") assert, *inter alia*, that McKenzie—CEO of the Debtor, who obviously negotiated his Settlement Agreement with the Debtor and appears to have been responsible for negotiating the Settlement Agreements on behalf of Group and Advisory based upon his signatures affixed thereto—engaged in fraudulent behavior vis-à-vis the Debtor, resulting in a multi-million dollar loss to the Debtor.[3]  The court has scheduled the trial of the Trustee Motion for July 29-30, 2020.

13.     Additionally, as set forth above, the proposed Settlement Agreements with Group and Advisory each include a 25% prepayment discount for amounts owing thereunder after payment of the Initial Payment (as that term is defined in the Group and Advisory Settlement Agreements) in each case.  It is unclear whether this prepayment discount is limited in availability to a scenario in which the relevant Insider desires to prepay the entire remaining

---

[3] INTL has not joined with the Objecting Creditors in the Trustee Motion.  However, INTL reserves the right to do so.

5

balance under its Settlement Agreement, or if it is also available to the relevant Insider in relation to any single yearly payment after the Initial Payment is made. If the latter, it appears Group and Advisory may take advantage of this discount by simply remitting each yearly payment owing under their respective Settlement Agreements <u>a mere one (1) day prior to the due date thereof</u>, all but guaranteeing that Group and Advisory will be receiving this 25% discount without any corresponding benefit to the Debtor's estate. What's more, the proposed Settlement Agreements with Group and Advisory provide seven (7) and six (6) year repayment periods, respectively, without any explanation as to why such lengthy repayment periods are necessary and appropriate. Perhaps this is simply the best Group and Advisory can do based on their current financial situations and therefore these proposed repayment periods are appropriate. But what if Group and Advisory have the financial wherewithal to make full lump sum settlement payments now? In that case, why should INTL or any other estate creditor be forced to wait upwards of seven (7) years to receive their *pro rata* portion of these payments, particularly where the settlement agreements do not contemplate the payment of interest despite the lengthy payment term?

14.     Lastly, each of the Settlement Agreements provides that the Insiders shall receive a release of any and all claims the Debtor and its estate may have against them in the event the Insiders timely satisfy their payment obligations thereunder. Curiously though, only the Settlement Agreement with McKenzie includes a mutual release in favor of the Debtor and its estate; neither the Group Settlement Agreement nor the Advisory Settlement Agreement includes a release of any claims those entities may have against the Debtor's estate. The Debtor fails to explain why its proposed Settlement Agreements with Group and Advisory fail to include mutual

6

releases, which would obviously inure to the benefit of the Debtor's estate to the extent those entities have claims against the Debtor.

15. INTL is attempting to obtain discovery from the Debtor and its CRO to address these issues.[4] In the event INTL obtains discovery from the Debtor and its CRO which confirms that the proposed Settlement Agreements represent fair and equitable compromises that are in the best interest of the estate, INTL reserves the right to withdraw this Objection.

## I. The Court should deny the Debtor's Settlement Motion.

Bankruptcy Rule 9019 requires court approval for a trustee or debtor-in-possession to settle a claim or cause of action that belongs to the estate. Fed. R. Bankr. P. 9019(a). The Supreme Court has instructed bankruptcy courts to make an informed, independent judgment as to whether a proposed settlement is "fair and equitable" and in the best interests of the estate. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968), *reh. denied*, 391 U.S. 909 (1968). In the Eleventh Circuit, courts evaluate a proposed settlement by considering the following factors:

(a) The probability of success in the litigation;

(b) the difficulties, if any, to be encountered in the matter of collection;

(c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

---

[4] Counsel to the Objecting Creditors has scheduled a deposition of Mr. Glade for Tuesday, June 30, 2020. Undersigned counsel to INTL communicated with counsel to IFS to determine whether IFS and Mr. Glade would be amenable to undersigned counsel actively participating in this deposition to address questions it has vis-à-vis the proposed Settlement Agreements in order to avoid any duplication of time and expense—and to potentially eliminate the need for the filing of this Objection. Counsel to IFS informed undersigned counsel that it would permit INTL to actively participate in the scheduled deposition, but only on the condition that INTL would not be allowed to use any of Mr. Glade's deposition testimony for impeachment purposes in any other proceeding, if necessary. INTL is unwilling to consent to such an arbitrary and (assuming Mr. Glade intends to testify truthfully) unnecessary condition. Accordingly, INTL is proceeding with this Objection and will pursue necessary discovery from the Debtor and Mr. Glade.

7

> (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.),* 898 F.2d 1544, 1549 (11th Cir.1990). "Courts consider these factors to determine 'the fairness, reasonableness and adequacy of a proposed settlement agreement.' " *Chira v. Saal (In re Chira),* 567 F.3d 1307, 1312–1313 (11th Cir.2009) (quoting *Martin v. Kane (In re A & C Prop.),* 784 F.2d 1377, 1381 (9th Cir.1986)). Additionally, this court has noted that:

> [t]here can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised [her]self of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.

*In re Diplomat Const., Inc.*, 454 B.R. 917, 920 (Bankr. N.D. Ga. 2011) (J. Diehl) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson,* 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)). "The court is neither to 'rubber stamp' the [debtor-in-possession's] proposals nor to substitute its judgment for the [debtor-in-possession's], but rather to 'canvass the issues' and determine whether the settlement falls 'below the lowest point in the range of reasonableness.'" *Diplomat*, 454 B.R. at 920-21 (quoting *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir.1983)). Further, where, as here, the proposed compromises are with insiders of the debtor, such compromises should be subjected to heightened scrutiny in order to confirm they are the result of arm's-length bargaining and are in the best interest of the estate. *See*, *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 497 (Bankr. S.D.N.Y. 1991) ("We subjected the agreement to closer scrutiny because it was negotiated with an insider, and hold that closer scrutiny of insider agreements should be added to the cook book list of facts that courts use to

8

determine whether a settlement is fair and reasonable."); *In re Present Co., Inc.*, 141 B.R. 18 (Bankr. W.D.N.Y. 1992) (denying motion to approve compromise with insiders where, despite debtor's and insiders' position that the objecting creditor's objection was baseless and that the court should simply trust them, the record did not confirm fulsome investigation of claims and objecting creditors had not been given sufficient opportunity to explore reasonableness of proposed compromise).

While the evidence before the court and creditors of the estate may ultimately confirm that the proposed Settlement Agreements with the Insiders are fair, equitable, and in the best interest of the Debtor's estate, the current record before the court is insufficient to support such a finding. This is especially so in light of the Debtor's acknowledgement that its claim against Group is one of the primary sources of funding for its Plan, as well as the allegations of fraud asserted by the Objecting Creditors against McKenzie in the Trustee Motion (which is currently scheduled to be tried by the court after the court's July 16 hearing scheduled for the Settlement Motion).[5] As set forth above, the only evidence the Debtor has offered in support of its Settlement Motion are naked assertions (not even a declaration signed under penalty of perjury or a supporting affidavit) that the Debtor has obtained "discovery" from the Insiders and that the Debtor and/or its CRO engaged in arm's-length negotiations with the Insiders (the CEO of the Debtor or entities on whose behalf the Debtor's CEO signed). There is <u>zero</u> evidence of the actual scope of the Debtor's and/or its CRO's investigation of potential claims against the Insiders, including but not limited to evidence of the specific documents the Debtor and/or its CRO reviewed and how far back in time the Debtor's and/or its CRO's review stretched. Without

---

[5] In light of this fact, and in light of the fact that the Debtor's Plan has not yet been scheduled for confirmation, INTL asserts that it may be appropriate to continue the hearing of the Settlement Motion until some time after the Court has ruled on the Trustee Motion.

9

more, neither the Court nor INTL (nor, for that matter, any other creditors of the Debtor's estate) can determine whether the proposed Settlement Agreements are fair, equitable, and in the best interest of the Debtor's estate.

Additionally, as set forth above, it is unclear exactly how the mechanics of the prepayment discounts set forth in the Group and Advisory Settlement Agreement will work, if approved. Because the available prepayment discount is significant (25%), and because there is a possibility that this benefit provided to Group and Advisory will not result in a corresponding benefit to creditors of the estate, including INTL, creditors deserve clarity on this point to determine whether this prepayment discount is, in fact, in the best interest of the estate. The same is true for the proposed lengthy repayment periods provided to Group and Advisory.

INTL also asserts that the Debtor needs to explain why only one of the Settlement Agreements with the Insiders—the McKenzie Settlement Agreement—includes a mutual release. If neither Advisory nor Group has a claim against the Debtor's estate, then this may be a moot point. However, if both of these entities hold claims against the Debtor's estate, then such claims stand to dilute any recoveries to unsecured creditors, which means a release of those entities' claims would be valuable to, and in the best interest of, the Debtor's estate.

Ultimately, there are simply too many unknowns at this time for the court to determine whether the proposed Settlement Agreements with the Insiders satisfy the tests articulated above. Perhaps the Debtor and its CRO will produce additional evidence sufficient to support their position that the proposed Settlement Agreements are fair, equitable, and in the best interest of the Debtor's estate. Until then, INTL asserts that the Debtor's Settlement Motion should be denied.

Dated: June 29, 2020

/s/Ryan D. Thompson
Ryan D. Thompson
*Attorney for INTL FCStone Financial, Inc.*

**OF COUNSEL:**

Ryan D. Thompson
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203
Telephone:  (205) 254-1854
Facsimile:  (205) 254-1999
Email:  rthompson@maynardcooper.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2020, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record, and on the following:

| | |
|---|---|
| John D. Elrod<br>GREENBERG TRAURIG, LLP<br>3333 Piedmont Road, NE<br>Suite 2500<br>Atlanta, Georgia  30305<br>Telephone:    (678) 553-2259<br>Facsimile:     (678) 553-2269<br>Email:           elrodj@gtlaw.com<br><br>*Proposed Counsel for the Debtor* | Jonathan S. Adams<br>OFFICE OF THE U.S. TRUSTEE<br>362 Richard Russell Building<br>75 Ted Turner Drive<br>Atlanta, Georgia  30303<br>Telephone:    (404) 331-4437<br>Email:           jonathan.s.adam@usdoj.gov<br><br>*Counsel for U.S. Trustee* |
| Lucas W. Andrews<br>WATSON SPENCE LLP<br>Georgia Bar No. 019533<br>999 Peachtree Street NE<br>Suite 1130<br>Atlanta, Georgia  30309<br>Telephone:    (678) 433-6756<br>Email:           landrews@watsonspence.com<br><br>*Counsel for R. Bryan Edwards* | John A. Thomson, Jr.<br>ADAMS & REESE LLP<br>3424 Peachtree Road, NE, Ste. 1600<br>Atlanta, Georgia 30326<br>Telephone:    (470) 427-3706<br>Facsimile:     (404) 500-5975<br>Email:           john.thomson@arlaw.com<br><br>*Counsel for Citadel Securities, LLC* |

I further certify that I have served the foregoing via U.S. First Class mail, postage prepaid, and via email on the following:

Craig Walker
650 Glenbarrett Court NE
Marietta, Georgia  30066
Telephone:    (404) 416-9065
Email:           craig.walkeratl@gmail.com

*Pro Se*

                                                 /s/Ryan D. Thompson
                                                 *Of Counsel*